**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1500**

S. L. M., an infant, by and through her mother and next
friend, Amy L. Musick,

       Plaintiff – Appellant,

    v.

DOREL JUVENILE GROUP, INC.,

       Defendant – Appellee,

    and

COSCO MANAGEMENT, INC.,

       Defendant.

Appeal from the United States District Court for the Western
District of Virginia, at Abingdon.  James P. Jones, District
Judge.  (1:11-cv-00005-JPJ-PMS)

Argued:  January 29, 2013      Decided:  March 25, 2013

Before KING, WYNN, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  James J. O'Keeffe, IV, GENTRY, LOCKE, RAKES & MOORE,
Roanoke, Virginia, for Appellant.  Jonathan Judge, SCHIFF
HARDIN, LLP, Chicago, Illinois, for Appellee.  **ON BRIEF:** Walter
C. Greenough, SCHIFF HARDIN, LLP, Chicago, Illinois; Lynne

Blain, Dannel C. Duddy, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, PC, Glen Allen, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this products liability action, Amy L. Musick, as mother and next friend of her infant daughter, S.L.M., appeals the judgment of the district court in favor of Dorel Juvenile Group, Inc., the defendant below. Dorel, which manufactures and markets child safety seats, was sued by Musick in the Western District of Virginia for grievous head injuries S.L.M. sustained when a young, inattentive driver struck the Musicks' minivan in the rear. At the close of the evidence and the parties' arguments, the court instructed the jurors on Virginia law, then produced a special verdict form, directing the jury to consider sequentially: (1) whether Dorel's High Back Booster seat (the "booster seat"), in which S.L.M was secured at the time of the accident, was defective; (2) if so, whether the defect proximately caused the girl's injuries; and (3) in the event that defect and causation had been adequately proved, the proper amount and attribution of damages.

The jury returned its verdict in favor of Dorel, finding at the threshold that the booster seat was not defective. Musick subsequently moved for a new trial, alleging that certain evidence was improperly admitted, that the jury was led awry by the district court's instructions, and that defense misconduct unfairly tainted the proceedings. The court denied Musick's motion and entered judgment for Dorel. On appeal, Musick

3

pursues more or less the same assignments of error, contending primarily that the jury was unduly influenced by the court's decision to allow Dorel to admit into evidence that it designed and constructed the booster seat in compliance with Federal Motor Vehicle Safety Standard 213 ("FMVSS 213"), 49 C.F.R. § 571.213, which establishes child safety seat standards based on testing conducted for frontal impacts, but not on testing for rear-impact collisions like the one that injured S.L.M. In accordance with our explanation below, we reject Musick's challenges to the jury's verdict and affirm.

I.

As prescribed by the federal rules, "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[,] and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by" any of several dangers, including unfair prejudice and confusion of the issues. See Fed. R. Evid. 403.

The district court here was imbued with "broad discretion in ruling on questions of relevancy and in balancing the probative value of relevant evidence against any undue prejudice." United States v. Zandi, 769 F.2d 229, 237 (4th Cir.

4

1985) (citing <u>Hamling v. United States</u>, 418 U.S. 87, 124-25 (1974)).  We review the court's evidentiary rulings merely to ensure that it did not abuse its considerable discretion.  <u>See</u> <u>Belk, Inc. v. Meyer Corp., U.S.</u>, 679 F.3d 146, 161 (4th Cir. 2012).

II.

We begin with black-letter law, namely, that "a product's compliance with an applicable product safety statute or administrative regulation is properly considered in determining whether the product is defective with respect to the risks sought to be reduced by the statute or regulation."  Restatement (Third) of Torts:  Prod. Liab. § 4(b) (1998); <u>see</u> <u>Talley v. Danek Med., Inc.</u>, 7 F. Supp. 2d 725, 731 (E.D. Va. 1998) (observing that, in evaluating design defect, "'a court should consider whether the product fails to satisfy . . . applicable government standards'" (quoting <u>Redman v. John D. Brush & Co.</u>, 111 F.3d 1174, 1177 (4th Cir. 1997) (internal citation omitted))).  Were we to accept Musick's position that FMVSS 213 is not an "applicable" administrative promulgation (and thus irrelevant to Dorel's defense), we would also be constrained to accept that the "risks sought to be reduced" by the regulation necessarily excluded the specific risk of injury through a rear-end collision.  In light of such exclusion, it would logically

5

follow that FMVSS 213 could not have been intended to reduce the risks presented by motor vehicle collisions as a whole.

We cannot so construe the regulation, which provides on its face, plainly and simply, that its purpose is "to reduce the number of children killed or injured in motor vehicles," without regard to how those children may come to be endangered. 49 C.F.R. § 571.213 S2 (2012). At trial, the regulation's supposed lack of attention to rear-impact testing was readily explained by Dorel's expert, William Van Arsdell. Dr. Van Arsdell testified that the government had once considered implementing standards based on rear-impact testing, but deemed action unnecessary because the "child seats on the market would have passed those . . . standards." J.A. 1467.[1] Under these circumstances, we could hardly attribute to FMVSS 213 the abbreviated reach that Musick urges.

Moreover, though Musick's claim proceeded on a theory of strict liability and not negligence, the care with which Dorel designed the booster seat was yet placed in issue. See Turner v. Manning, Maxwell & Moore, Inc., 217 S.E.2d 863, 868 (Va. 1975) (instructing that a "manufacturer is under a duty to exercise ordinary care to design a product that is reasonably

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties to this appeal.

6

safe for the purpose for which it is intended (citation omitted)). Indeed, the jury was instructed in absolute conformity with Turner. See J.A. 1657. Evidence of Dorel's compliance with FMVSS 213 was therefore relevant and necessary to demonstrate the company's care in bringing the booster seat to market.

Although the evidence in question was helpful to Dorel, and thus, by corollary, prejudicial to the plaintiff's case, that prejudice did not rise to the level of unfairness contemplated by Rule 403. Indeed, it arguably would have been unfair to Dorel for the district court to have excluded the challenged evidence on relevancy grounds, particularly given the nature of Musick's proof of defect. That proof consisted of expert and anecdotal testimony intended to show that the booster seat was defective because Dorel could have designed it with larger side wings and energy absorbing padding, at a minimum of additional cost. See, e.g., J.A. 996-97.

There was no evidence, however, to the effect that the hypothetical design changes would have made the seat safer only in the event of a rear-impact collision. Rather, the testimony established that the proffered changes would have made the seat more safe generally. See, e.g., J.A. 699 (testimony of plaintiff's expert on biomechanics, Dr. Stefan Duma, that padding "[a]bsolutely would have effectively eliminated any risk

7

of skull fracture," without qualification as to type of collision); id. at 996 (testimony of mechanical engineer Gary Whitman, appearing on behalf of plaintiff, that "large side wings and energy absorbing padding was necessary to provide good protection to children," without minimizing protective benefits afforded in front- or side-impact collisions).[2]

Because Musick's evidence attacked only the general design of the booster seat, it would have been inequitable to have excluded Dorel's competing evidence in kind. We recognize that our conclusion today may be in some tension with those reached by two state courts that have considered the similar issue. See Malcolm v. Evenflo Co., Inc., 217 P.3d 514, 522-23 (Mont. 2009); Uxa ex rel. Uxa v. Marconi, 128 S.W.3d 121, 130-31 (Mo. Ct. App. 2003). We respectfully disagree with the outcomes reached in these cases, and emphasize that the court's decision in Malcolm was based in part on Montana's rejection of that portion of the Restatement on which we have relied as accurately stating the law of Virginia. The summary ruling in Marconi, under

---

[2] The skull fracture alluded to by Dr. Duma was devastating, permanently disabling S.L.M. such that her lifetime cost of care is, according to the trial evidence, likely to approach $10 million. See J.A. 874-75. The circumstances of this case are truly tragic, as the district court acknowledged. See id. at 1873. We do not envy the task undertaken by the jury here, which must have been extraordinarily difficult; that is all the more reason, however, for us to respect the verdict it ultimately reached.

circumstances less distinguishable from the case at bar, suffers from a brevity of analysis and does not persuade us.[3]

Based on the above considerations, we are unwilling to conclude that the district court abused its discretion in admitting evidence of Dorel's compliance with FMVSS 213. We have also examined the jury instructions relating to that regulation, and we can discern no abuse of discretion; each instruction accurately states Virginia law and was warranted by the trial evidence.[4]

## III.

With respect to the remaining assignments of error, we are content to affirm the judgment below on the grounds set forth by

---

[3] Musick also maintains that the district court abused its discretion by admitting into evidence what was represented to be a "preamble" to the regulation. Although there is now some substantial question as to whether the exhibit is what it was represented to be, there was no objection made at trial, and its admission was not plain error.

[4] We single out for comment the district court's instruction relating to FMVSS 213. The court instructed the jury that, as to the question of defect, it "may consider, among other things, any pertinent safety standards issued by the government. Such evidence may assist you in determining whether or not the car seat in question was defective, but does not require that you find one way or the other as to that issue." J.A. 1660 (emphasis added). We are satisfied that the court's instruction adequately informed the jury that, contrary to Musick's contention, Dorel's compliance with the regulation was not dispositive of the case as a whole.

9

the district court in its thorough and well-reasoned memorandum Opinion and Order denying Musick's motion for a new trial.  <u>See</u> <u>Musick v. Dorel Juvenile Group, Inc.</u>, 847 F. Supp. 2d 887 (W.D. Va. 2012).

<u>AFFIRMED</u>